Please call the next case. 1286 Rockford Park District v. Brad Huffston. Counseling, you may proceed. May it please the Court, Counsel? Good morning, Your Honors. My name is Rory McCann. I'm here on behalf of Rockford Park District. I'm here today to ask that the decision entered by the Workers' Compensation Commission be reversed as it is against the manifest weight of the evidence. Our threshold dispute is with findings on accident. As we know, in Workers' Compensation, we can have acute event accidents and repetitive trauma accidents. I hear there's no dispute that what's alleged as the mechanism is repetitive trauma. Also, as we know, when an individual has a pre-existing condition, there are different cases and inquiries that we look into. And there is significant pre-existing medical involvement with Mr. Huffston. As was artfully described by his doctor in January 2004, he had a quite large and devastating herniation that required urgent surgical intervention. He was discharged a few months later and still experienced low back pain and numbness for which he was prescribed narcotic medication. In the years after that, he did treat sporadically, but he did seek treatment for aggravations with respect to shoveling snow, a golf incident, and subsequent to a car accident, he complained of low back pain, and he did regularly have scripts filled. There was a 2006 MRI done which showed a chronic fracture with loss of disc height at L2-3, neuroforaminal narrowing, retrolisthesis and disc protrusion at L5-S1, and degenerative changes. So in the year prior to the alleged accident date, January 2010, this gentleman filled, we were able to tell, nine refills for a hydrocodone injection. He was on acetaminophen, which is a narcotic. So clearly the record shows that he was symptomatic for low back pain in the time prior to the alleged accident date. Well, let's assume he had a pre-existing condition. As you know, the issue is whether or not the work condition exacerbated or aggravated the pre-existing condition. Clearly, his job involved heavy labor. The commission found there was the casual connection. He testified to the claim that his back gradually worsened. And you've got two conflicting medical opinions about the causal connection. The arbitrator adopted Dr. Gosio's opinion over the other doctor, Dr. Neal. So how is this against the manifest way of the evidence? I'm glad you asked that, Justice. That is the issue in the case, right? Right. And there are two very important points to address there. First, the aggression occurred while he was on vacation in December. He testified to that. What the risk of sounding pretentious, there's a Latin phrase called cum hoc ergo proctor hoc, which means correlation proves causation. And that, I think, is a fatal flaw. Actually, it means after this, therefore, because of this. Cum hoc ergo proctor hoc. That's why I probably shouldn't have attempted this. After this, therefore, because of this. It's fallacious logic since the time of Plato. And there's your answer to that, Maxim. Right. But the fallacy that I want to focus on is that I think there is a correlation proves causation issue here. The man testified of his job duties. That's clearly in the record. He trimmed trees, removed snow. He painted benches. He lifted bags of fertilizer. We know that. And we're not challenging that at all. However, there's no connection. He doesn't say that, you know, at the end of the day, I felt some pain in my back. There is nothing which links the work activity to the job. And he had an opportunity to do so. But the treating, his treating physician made the opinion not only that his work activities were a cause, but that they were the primary cause of the acceleration and aggravation of his preexisting condition. So why is there not sufficient evidence in the record to support the commission's decision? Well, I would posit to you that's kind of a link, isn't it, between his work activities? His doctor says that it was the primary cause. We need to look at the whole picture, though, Justice Stewart. What I would say, my response to that is that Dr. Gosio did testify to that at his deposition. And if we take that one shred of evidence in isolation, then, sure, I'm cooked. I'll acknowledge that. However, he also said, first, that's not the standard. And second, he also testified that the ‑‑ Well, if he said it and the commission adopted it, which they did, then it sounds like you're cooked. Well, what Dr. Gosio also said, though, and what I think is not reasonable here, is that Dr. Gosio testified that, on cross, that given the 2004 herniation, which was not addressed in any of his previous reports or in his ‑‑ during direct, he testified that his condition could have progressed with or without physical work activities and be due to activities of daily living. So, therefore, I think it's pretty clear that he doesn't have an opinion, based upon a reasonable degree of medical and surgical certainty, that there was an aggravation if he's allowing activities of daily living to account for his present condition at that time. Now, he also, Dr. Gosio also ‑‑ Excuse me. But he also wrote in a couple of reports that it was the work activities were the primary cause and said in those reports these opinions are all within a reasonable degree of medical certainty. And he contradicted himself later, I would posit to you, during cross‑examination. And he also contradicted himself in writing on the IMRF forum when he said that there's no accident arising out of the employment with regard to Mr. Hobson. So those are two very ‑‑ two opinions which ‑‑ He says his work activity is the single most contributing factor to the worsening of his condition, that his injury in addition to his activities on a regular basis related to his job description have caused the premature deterioration and degeneration of the patient's spine and that his work activity has been the most aggravating factor in his back condition as it is today. That's what he wrote. That's an exact quote. And the commission seemed to buy it. Right. But the commission ignored the contradiction that occurred elsewhere in the record with Dr. Gosio. So the question is, does his opinion stand? And I would suggest that it did not stand. Maybe the commission didn't think it was a contradiction. That Dr. Gosio acknowledged and admitted that his condition could have progressed with or without physical work activities? It probably could have progressed, but the question is, it would have progressed slower. This was the aggravating factor that caused it to progress at that instant. I mean, the fact that the guy is going to get worse over time, anybody with degenerative disc disease is going to get worse. You don't get better. So the question is, how fast did it happen? Well, it accelerated during the vacation time in December 2009. The record is clear there. The petitioner himself testified to that, that his condition accelerated while he was on vacation for the month of December. That's the only evidence of acceleration that I found when looking at this record. I mean, simply put, I do not believe there is enough in this record just to support the commission's decision, and I think this is a true manifest weight case. Well, there only has to be some evidence, does there not, to support the commission's decision? Well, counsel raised it, cited it to Orsini by indicating that perhaps one shred of evidence is enough to survive a manifest weight standard. Well, I don't know that the law has any cases that say one shred of evidence. The test is whether there is evidence in the record, quote, unquote, to support the commission's decision. And here, based on a testimony of one doctor, that would be enough, would it not? It would not, because I think it would be plainly apparent that his opinion of causation did not survive based on his contradiction on paper with the IMRF form and based  Now you are running afoul of another rule, that is, in terms of credibility and weight to be given to the evidence, those are within the province of the commission. We are not to substitute our judgment for credibility. You are aware of that? Right. Understood. I don't think the record, though, is harmonious on the point of causation from Dr. Gozio, because he holds two separate opinions. So therefore, it's So your argument is that his position or his testimony has to be inherently flawed. Is that what you are saying? Right. It's logically inconsistent. And on top of that, he also never took a history from the Petitioner. If you look in his medical records, there is no subjective portion of his medical records which suggests that Mr. Hobson was reporting work aggravations. And I think it's also notable that Mr. Hobson reported to Dr. Neal that he, quote, quote, he stated, I really honestly don't know, unquote, if the job had any impact on his condition. So I think the key case for us to consider is lawless. And I think the questions, is there evidence that a degenerative disc disease was aggravated by the job, comes from the rule in lawless. And I would posit to you that the answer is no. And then the second question that would come from that rule is also, is there a, does the January 18, 2010 date hold any significance as a plausible manifestation date? And I would also suggest that answer is no, because January 18, 2010 is just simply the last date that he worked. There is no testimony that he performed any job activities in January after he returned from work in December. January 10th or January 18th? January 18, 2010. That's the day he went to his doctor. Correct. And that's what you listed as the manifestation date, isn't it? The day he went to his doctor? Right. We take issue with that. We don't think there's anything in the record which supports that that should be a proper manifestation date. What was the manifestation date in Duran? Manifestation date in Duran was a diagnosis, I believe, right in 2001. When he went to the doctor. Right. This gentleman had been going to the doctor before that, though, which is what I would ask that you focus on. There's been, there were positive MRIs and there was Vicodin refills in the year before. So treatment continued. Our position is basically that the man had a degenerative disc disease condition, a traumatic progression, and there is no significance to January 18, 2010. He had it before, he had it on that date, and he had it again. And as Justice Hoffman pointed out, it's going to get worse. And that's the nature of that condition. And simply based on the fact that he had some heavy-duty type job activities, that alone in isolation is not enough to prove this. So if anybody has additional questions. I don't believe there are. Thank you, counsel. Thank you. Good morning, Your Honors. My name is Tracy Jones, and I represented the petitioner in this manner. I'm going to work backwards from where counsel ended. Regarding the date of manifestation, Duran tells us that it can be any of a number of dates. It could be the date when symptoms first began. It could be the date they first sought medical treatment. It can be the date that they no longer were able to perform their job duties. It could be the date that they understood their job duties were the cause of the injury. In this case, January 18, 2010, actually satisfies two of the things that Duran tells us. First, it's the last day he was able to carry out his job activities. And second, it's the date he sought medical treatment for the back condition when he went to his doctor and said, I can no longer do what I've been doing because of my pain. So the commission's finding that that manifestation date is correct and should be affirmed. Regarding the issue of whether or not he went to the doctor and reported that his work activities were the cause of his condition, counsel suggests that there's nothing subjectively in the history sections of the records that support his acknowledgment to the doctor that his back condition was due to his job duties. And I say that's not correct. If you look at Dr. Gosio's March 1, 2010 record, which is contained in the record on page 192, he very specifically sets forth not only the past medical history, so Dr. Gosio was aware of that, but he says the patient works in maintenance for the Rockford Park Systems. He's had an injury to the shoulder as well with previous surgery in the place of employment. He denies specific injury or accident. He has had gradual worsening of his low back, hip and leg pain. And the past two months or more have been the most severe. And then subsequent to that, Dr. Gosio goes through at least three letters back and forth with the employer where he says I know what the job is, I know what his past medical history is. Well, the employer sent the job description. They did. To the doctor. They sent him the job description, which if you look at specifically says occasional lifting of more than 100 pounds, frequent lifting of more than 50 pounds and constant lifting of 20 pounds. That's in the job description that they provided. They asked him, do you think this is work related? And Dr. Gosio said yes, to a reasonable degree of medical and surgical certainty. The work activities that you've provided to me in this description are the single most contributing factor to the breakdown of his back and the need for treatment and his inability to continue working. And then in subsequent letters goes on to say he can't continue doing that type of work. He needs restrictions. And he went back and forth trying to figure out what it is he could still do and what he can't do. There's no question in this record that the commission's decision is clearly supported by a manifest weight. From Dr. Gosio's records, Dr. Gosio's testimony, to even the testimony of Dr. Neal who acknowledged that frequent heavy lifting can cause a breakdown in the spine, the commission's decision is not contrary to the evidence here. And so I'd ask that you affirm the decision in all respects. And unless there's any additional questions, I'll have a seat. Thank you. Thank you, Counsel. Counsel, you may reply. Just briefly. Counsel's statements with respect to the Duran rule and the manifestation weight case line, I have no objection to what she stated. Simply put, I would just say that manifestation date does not apply because as indicated in our argument, it's that there was no accident. And therefore, no significance should be accorded to January 18, 2010. With respect to her statements regarding Dr. Gosio, the fact is, and I don't have the exact date in front of me, but I believe the IMRF note was from April 2010, which would have been subsequent to the March 2010 causation statement he wrote. And the April IMRF document indicates that there was no accident arising out of the appointment. So I would submit that to you as inconsistent as well, in conjunction with my earlier remarks. Thank you. Thank you, Counsel. This matter will be taken under advisement. The written disposition shall issue.